**CAVANAGH et al. v. BALLOU, Superintendent of Public Schools.**

**Civil No. 8828.**

District Court of the United States for the District of Columbia.

Jan. 18, 1941.

446

Cornelius H. Doherty, of Washington, D. C., for plaintiffs.

Matthias Mahorner, Jr., of Washington, D. C., for defendant.

LAWS, Justice.

This case is before the Court upon a motion filed by defendant, the Superintendent of Public Schools of the District of Columbia, to dismiss the complaint filed by plaintiffs. The complaint seeks to enjoin the defendant from discharging a non-resident student from attendance upon Wilson Teachers College in the District of Columbia, because of refusal to pay tuition charged. The plaintiffs are the student, Ruth M. Cavanagh, and her father, John F. Cavanagh, both of whom are residents of Arlington, Virginia. It is admitted by the pleadings that the father is responsible for the maintenance, education and support of the student, that he is employed in the District of Columbia and owns real estate here. The plaintiff, Ruth M. Cavanagh, in September, 1937, when a minor, was enrolled as a pupil at Wilson Teachers College and has continued in attendance upon the College until the present. While not formally alleged, it was admitted, at the oral argument, that on April 26, 1940, the said Ruth M. Cavanagh became twenty-one years of age. On October 17, 1940, John F. Cavanagh was sent a bill for tuition of his daughter, covering the first quarter of the 1940 session. Payment not being made, plaintiffs were advised by defendant that unless it was made within five days, the student would be discharged from attendance at the College. Upon receipt of the notice, this suit was filed.

Plaintiffs contend that by certain Acts of Congress, Ruth M. Cavanagh is exempt from the payment of tuition. The Act of March 3, 1915, particularly relied upon, provides that: "Hereafter all pupils whose parents are employed officially or otherwise in the District of Columbia shall be admitted and taught free of charge in the schools of said District." 38 St. at Large 910.

Plaintiffs contend that Ruth M. Cavanagh is a pupil whose parent is employed in the District of Columbia, and under the Statute she is permitted to attend Wilson Teachers College free of charge. On the contrary, defendant contends that the word "pupils" used in the Statute is ambiguous, and that a consideration of the history of the legislation of Congress with reference to public schools in the District of Columbia shows that only those in attendance upon undergraduate schools and those under twenty-one years of age were intended to be taught free of charge, when they were non-residents and their parents were employed in the District of Columbia. Defendant further argues that the law gives the Board of Education the right to fix the terms for admission and graduation of pupils; that such power is discretionary, and that there was a valid exercise of discretion, which this Court may not control, when the Board of Education refused to permit Miss Cavanagh to continue to attend the College unless she paid the tuition charged.

It is clear that the word "pupils" has two recognized definitions in this country. One limits the word to children and youths under instruction, and the other includes generally a person of any age under instruction. (Webster's New International Dictionary; Funk & Wagnall's New Standard Dictionary.) It, therefore, is the duty of this Court to ascertain in which sense Congress used the word when it stated, as before mentioned, that: "All pupils whose parents are employed * * * in the District of Columbia shall be admitted and taught free of charge in the schools of said District."

The first contention of defendant is that it was the intention of Congress that the word "pupils" as used in this Act should be limited to those in attendance upon undergraduate schools. Reference is made to legal authorities which state that persons of

one school district may not be admitted free of charge into another school district without authority of statute. Therefore, it is argued that there was no right of non-residents to attend District of Columbia Schools until the Act of Congress of March 3, 1899, was passed. This Act provided: "That hereafter pupils shall not be admitted to or taught free of charge in the public schools of the District of Columbia who do not reside in said District, or whose parents do not reside or are not engaged in business or public duties therein: Provided, That such pupils may be admitted to and taught in said public schools on payment of such amount, to be fixed by the board of school trustees, with the approval of the Commissioners of the District, as will cover the expense of their tuition and cost of text-books and school supplies used by them; and all payments hereunder shall be paid into the Treasury, one-half to the credit of the United States and one-half to the credit of the District of Columbia." 30 Stat. at Large 1056.

■ At the oral argument of this cause, it was agreed that after passage of this Act non-residents were admitted by the Board of Education to the Normal Schools of the District of Columbia, as well as to High Schools and Elementary Schools. It was further agreed that when the Act of February 25, 1929, 45 Stat. at Large 1276, c. 314, permitted the two existing Normal Schools to be expanded into Teachers' Colleges, and thereafter Wilson Teachers College was founded, non-residents continued to be admitted. As heretofore pointed out, the plaintiff, Ruth M. Cavanagh, a non-resident, was admitted. Moreover, it was stated at oral argument that this is a "test case," since others situated similarly to Miss Cavanagh are in Wilson Teachers College. These admissions to Wilson Teachers College could only be made because the Board of Education and the Superintendent of Schools interpreted the Act of Congress, which permitted "pupils" to be admitted "in said public schools", as extending the right to graduate, as well as to undergraduate schools. This interpretation, having been followed over a long period of time, during which it is inconceivable Congress was not advised of the practice, it seems has become legislatively adopted, and it is too late now to argue a contrary interpretation with any degree of force.

■ Moreover, I feel this is the correct interpretation of the Statute. The normal schools or teachers' colleges at all times have been referred to in the Acts of Congress as "public schools." Congress stated conditions under which non-resident pupils might be admitted to "public schools" free of charge and when they must pay. There is no suggestion of limitation of right to enter the public schools and no distinction is made between graduate and undergraduate schools. Congress not having made the distinction or limitation, this Court may not do so. But if there might be any remaining doubt as to this interpretation of the Law, it clearly is removed by the provisions of Title 7, Sec. 17, D.C.Code (the aforesaid Act of February 25, 1929, 45 Stat. at Large 1276, c. 314), where; in providing for expansion of the normal schools into teachers' colleges, Congress gives the Board of Education the power "to make * * * rules and regulations for the organization and government of the normal schools, * * * and to fix terms for the admission and graduation of *pupils*." Thus Congress in express language refers to "pupils" at the normal or graduate schools, including, of course, the precise school or college concerned in this case. I, therefore, conclude that, as used in the Act of Congress admitting non-resident pupils to public schools, the word "pupils" was used to include those who might be admitted to graduate schools, as well as to undergraduate schools.

But the defendant contends that granting non-resident pupils may be admitted to graduate schools, including Wilson Teachers College, and further granting they may attend free of charge when their parents are employed in the District of Columbia, this right exists only during the minority of the student. It is pointed out that at twenty-one years of age a person becomes emancipated in law and the duty of the parent to support him is extinguished. From this it is deduced that Congress must be presumed to have expected the emancipated student to assume obligation for his own support and education and hence Congress would deal with his status rather than the status of his parents.

■ In this connection, it may be observed that there is no legal reason why a parent may not support an adult son or daughter. As hitherto pointed out, it is admitted in this case at bar that the father does in fact support, maintain and educate his adult student daughter. Thus he has a financial interest in the question of her tuition. There is no legal reason why Con-

gress does not have power to make provision for free education of an adult student whose parent is employed in the District of Columbia. If the power is recognized and the intention of Congress is clear, the Court must not speculate on what Congress likely would have done.

■■■ It is an elementary rule of judicial construction, where words of a Statute are susceptible of different meanings, that the intention of the Legislature must govern. This leads us to consider what the intention of Congress was. In arriving at this intention, the Court should take into consideration the knowledge of the legislators, and in light of such knowledge, what action they took or failed to take. It must be assumed they knew the word "pupils" sometimes was used when referring to children and youths under instruction, and at other times was used in a broader sense, so as to include those of any age who were under instruction. By the Act of 1915 they permitted non-resident "pupils" to be admitted to normal schools. Conceivably these pupils might be adults before graduation; it was possible they *might* be adults even before admission. Notwithstanding this, no limitation was placed on the definition of the word "pupils".

■ In 1929 when Congress permitted the extension of the normal schools to a four-year college course, with right to furnish degrees, the legislators knew that in such a college, not only *might* the student be an adult, but that in most instances he would be. (One usually enters kindergarten at five years of age, attends a year, then pursues a year each in six other grades of elementary school, two grades of Junior High School, four grades of Senior High School, four years of normal school or College, making him twenty-one years of age on entering his graduation year.) The legislators further knew that in instances where students had been retained in any grade for more than a year, they would become adults at an earlier stage in normal school or College. Knowing full well adults would be admitted, Congress made no provision for them to pay when non-residents and when their parents were employed in the District of Columbia. It also is fair to assume that in late years, after the creation of Wilson Teachers College, the Legislators knew that the School Board in fact was admitting non-resident adults to the College, which, as heretofore pointed out, might only be done by virtue of a statute permitting non-resident "pupils" to be admitted. If this interpretation of the admission of "pupils" had been contrary to the wishes of Congress, the Legislators would be challenged to make it clear that the word "pupils" should be limited to those under the age of majority. Yet no such action was taken, despite a situation existing over a number of years. Under these circumstances, it seems fair to conclude that Congress intended no such limitation.

It is anomalous in this case that the defendant contends (as he must, in view of his practice of admitting non-resident adult students to the College) that adult students may be so admitted by virtue of an Act of Congress which provides non-resident "pupils" may be admitted; and at the same time contends that when Congress exempts non-resident "pupils" from pay, the exemption does not apply to adults. He admits Congress refers to adults when it provides for entrance of non-resident "pupils", but denies Congress refers to adults when it provides free tuition for non-resident "pupils". Congress has indicated no such distinction between its uses of the same word and this Court cannot accept such conflicts of interpretation.

■ It is my opinion that Congress intended that non-residents, whether adults or minors, under certain conditions might be admitted to any public school in the District of Columbia, graduate or undergraduate, and that when their parents are employed in the District of Columbia, no tuition shall be charged for them, whether adults or minors.

■ There seems to be no foundation for the remaining contention of the defendant that the Board of Education in its discretion may impose a charge upon a non-resident student at Wilson Teachers College. In the first place, there is no showing in this case that the Board of Education exercised such discretion, the only showing being that the Superintendent of Schools wrote a letter that unless tuition was paid the student would be discharged. In the second place, Congress at no time gave the Board of Education power to determine when there should be and when there should not be charges made for non-residents. The history of all of the legislation with respect to the public schools shows that Congress has assumed to deal with this subject specifically and in mandatory language. Thus in this matter, the Board of Education has no right to exercise discre-

tion by reason of a Statute which permits it simply "to fix terms for the admission and graduation of pupils" in the normal schools.

Defendant's motion to dismiss will be overruled.